ORIGINAL

NIGHT BOX
FILED
JAN 2 4 2003
CLERK, USDC / SDFL / WPB

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

COOPER CARRY INC.,

Plaintiff,

v.

JAMES H. BATMASIAN AND MARTA BATMASIAN, d/b/a INVESTMENTS LIMITED, FLORIDA "KEY WEST" ARCHITECTURAL DESIGNERS and GERALD JOSEPH OAKLEY,

Defendants.

Civil Action No. 02-81049-CV-DMM

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

## I. Introduction

Defendants' motion to dismiss first argues that Plaintiff Cooper Carry Inc.'s federal claims should be dismissed because Cooper Carry is simultaneously prosecuting a state court action to foreclose its lien for services rendered in creating the architectural plans at issue in this case. Defendants further argue that Cooper Carry granted Defendants an implied license to use its copyrighted architectural plans *even though* Defendants failed to pay for those plans. The motion then asserts that a Florida administrative regulation should trump the Copyright clause of the U.S. Constitution and the Federal Trademark Act of 1946. Given the absurdity of these arguments, it is not surprising that the motion is not supported by any evidence or any pertinent legal authority. The Complaint properly states a claim for both copyright infringement and violation of the Lanham Act. Thus, Defendants' motion to dismiss should be denied.

31

## II. Argument and Citation of Authorities

### A. The Complaint States a Claim Upon Which Relief May be Granted.

The Eleventh Circuit, in *Harris v. Procter & Gamble Cellulose Co.,* 73 F.3d 321 (11th Cir. 1996), stated:

> It has long been the rule. . . that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. Moreover, in evaluating the sufficiency of the pleading attacked on motion, both the district court and this court are required to construe the complaint in the light most favorable to the plaintiff and to take the allegations contained therein as true. The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. A 12(b)(6) motion tests only the sufficiency of the claim set out in the plaintiff's pleadings.

*Id.* at 324 (affirming denial of motion to dismiss). Construing the complaint "in the light most favorable to the plaintiff" and "tak[ing] the allegations contained therein as true," it is beyond doubt that the Complaint satisfies the minimal standard necessary to overcome a motion to dismiss.

The elements for copyright infringement are "(1) a valid copyright and (2) copying by defendant." *Marling v. Ellison*, 218 U.S.P.Q. 702, 713 (S.D. Fla. 1982). Cooper Carry pleaded both of these elements. (*See* Complaint ¶¶ 29-33.) The elements of a false designation of origin under the Lanham Act are: "(1) that the item at issue originated with the plaintiff; (2) that the origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1289-90 (S.D. Fla. 2001). Cooper Carry pleaded these elements as well. (*See* Complaint

¶¶ 36-38.) Having properly pleaded all of the necessary elements of the claims of the Complaint, Defendants' motion to dismiss should be denied.[1]

**B. Plaintiff's Copyright Claims Are Valid.**

Defendants do not deny that Plaintiff properly alleges the elements of a claim for copyright infringement. Instead, they assert two arguments: First, they argue that Cooper Carry's copyright interests are adequately protected in the state court action; second, that Cooper Carry granted Defendants an implied license to use the copyrighted Plans. These arguments are not supported by any affidavits or other evidence and are legally misguided.

Defendants' argument that Plaintiff's copyright can be protected in state court fails because 28 U.S.C. § 1338(a) confers **exclusive** jurisdiction over copyright cases to the federal district courts. Thus, the Florida state court cannot resolve Plaintiff's copyright claim as a matter of law.

Defendants' "implied license" argument also fails. First, whether Cooper Carry granted an implied license is a factual issue that cannot be resolved on a motion to dismiss, particularly when, as here, Defendants submit no evidence to support their claims. *See Casielles v. Taylor Rolls Royce, Inc.*, 645 F. 2d 498, 502 (11th Cir. 1981) ("whether the parties have entered into a contract is an issue of fact."); *Telecomm Technical Servs. Inc. v. Siemens Rolm Comm.*, 66 F. Supp. 2d 1306, 1323 n.18 (N.D. Ga. 1998) (holding that the grant of an implied license is "fact intensive" and not appropriate for summary adjudication). As discussed below, determining

---

[1]To the extent Defendants' arguments relate to the evidence supporting Plaintiff's claims, such arguments should be brought in the form of a motion for summary judgment under Fed. R. Civ. P. 56 with affidavits and other evidence to support the motion. Defendants' current motion, however, is a motion to dismiss and was filed without any supporting evidence.

whether an architect has granted an implied license to a client involves evaluating several factors, including the nature of the parties' relationship and their intent, and thus is improperly raised by Defendants in a motion to dismiss.

Moreover, Cooper Carry did not grant Defendants an implied license to use the Plans. The standard AIA contract that Cooper Carry sent to Investments Limited as a starting point for negotiations specifically limits the use of the Plans. It states: "The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others . . . for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement." (*See* Declaration of David Kitchens, ¶10, attached to Plaintiff's Motion for Preliminary Injunction). Furthermore, the parties' prior negotiations indicate that they had a long-term business relationship and that Defendants intended for Plaintiff to remain architect for the entire project. To cite just two manifestations of this understanding, Mr. Batmasian's letter to Mr. Kitchens dated September 14, 2001 describes Cooper Carry's role as the "quarterback" of the various architectural and designing functions. (*See* Def's Mot. To Dismiss, Ex. B.) Soon thereafter, Mr. Batmasian wrote Mr. Kitchens again, explaining that he expected Cooper Carry to provide services until the Project was complete. (*See* Letter dated October 18, 2001, attached as Exhibit A).

Under these circumstances courts have rejected the implied license defense. For example, in *Nelson-Salabes, Inc. v. Morningside Dev. LLC*, 284 F.3d 505 (4th Cir. 2002), the court of appeals set out the following three factors to consider in determining whether an architect has granted an implied license to a client:

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts, **such as the standard AIA contract,** providing that copyrighted

> materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that the use of the material without the creator's involvement or consent was permissible.

*Id.* at 516 (emphasis added). Ultimately the *Nelson-Salabes* court concluded that the plaintiff/architect did not grant an implied license in large part because of the plaintiff/architect's submission of the standard AIA contract, which contained a clause limiting the use of the plans by others.[2] *See id.; accord Johnson v. Jones*, 149 F. 3d 494, 500 (6th Cir. 1998) (plaintiff's use of the AIA contract containing the standard copyright clause in negotiations held to be strong evidence that no implied license was granted). Thus Cooper Carry can prove facts sufficient to defeat, or at the very least call into question, Defendant's implied license defense, which is more than sufficient to defeat a motion to dismiss.

Finally, even assuming, *arguendo*, that Cooper Carry granted an implied license, Defendants' failure to pay Cooper Carry for its services nullified it. Any implied license to use the Plans without Cooper Carry's involvement would obviously have been conditioned on Defendants having paid Cooper Carry for its services **in full**.

In short, Defendants' implied license argument consists of one conclusory sentence, unsupported by citation to any evidence or even any relevant case law. Because Cooper Carry has alleged (1) ownership and registration of the copyright in its Plans, and (2) unauthorized

---

[2] Defendants' citation to the *Nelson – Salabes* case for support of the proposition that there was "without question, an implied license" is misleading, as that court came to the exact opposite conclusion on facts remarkably similar to those presented here. Furthermore, Defendants' reliance on *IAE Inc. v. Shaver* also is misplaced because in that case (unlike here) the plaintiff admitted that he was only to provide preliminary schematic design drawings, which amounted to less than 20% of the total design work needed on the project. 74 F.3d 768, 776-777 (7th Cir. 1996).

copying by Defendants, it has stated a copyright infringement claim, and Defendants' motion to dismiss must be denied.

**C. Plaintiff's Lanham Act Claims Are Valid**

As a preliminary matter, at the motion to dismiss stage, Plaintiff need only demonstrate that it has alleged sufficient facts to state a claim for relief. As noted, *supra*, in section II.A., the Complaint alleges all necessary elements of a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Defendants assert that Plaintiff's Lanham Act claims should be dismissed because the Florida Administrative Code (§61G1-18.002(2)) left the successor architect with "no choice but to" violate the Federal Act. Contrary to Defendants' assertion, the administrative code provision does *not* require a successor architect to take the former architect's copyrighted design, remove the former architect's title block and seal, and replace it with his own. Assuming, *arguendo*, however, that the Code does require these actions, the Code would be preempted.

In Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 104 S.Ct. 2694 (1984), the Supreme Court explained:

> Under the Supremacy Clause,[3] the enforcement of a state regulation may be preempted by federal law in several circumstances: first, when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law; second, when it is clear, despite the absence of explicit preemptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby left no room for the States to supplement federal law; and, finally, when compliance with both state and federal law is impossible, or when the state law

[3] The Supremacy Clause states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2.

> stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Id. at 699, 104 S.Ct. at 2700 (internal citations omitted).

The purpose and objective of Congress in enacting the Lanham Act was to avoid confusion in the marketplace as to the source of goods and services. Congress, in adopting the federal Lanham Trademark Act, stated:

> The purpose underlying any trademark statute is twofold. One is to protect the public so it may be confident that, in purchasing a product bearing a particular trademark which it favorably knows, it will get the product which it asks for and wants to get. Secondly, where the owner of a trademark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats. . . . To protect trade-marks, therefore, is to protect the public from deceit, to foster fair competition, and to secure to the business community the advantages of reputation and good will by preventing their diversion for those who have created them to those who have not.

S. Rep. No. 79-1333, 79th Cong., 2d Sess., *reprinted in* 1946 U.S.C.C.A.N. 1274, 1275.

In *Johnson v. Jones*, 149 F. 3d 494 (6th Cir. 1998), the Sixth Circuit addressed facts that are virtually identical to the facts here, and held that replacing a former architect's title block and seal creates confusion in direct contravention of the Lanham Act:

> [I]t is obvious beyond dispute that by taking [plaintiff's] name and seal off of the plans and replacing them with his own, [defendant] intended for people to assume that the plans were his, and not [plaintiff's]. Indeed this Court is hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were [defendant's] work. Few are the cases demonstrating a more obvious and imminent likelihood of confusion.

Id. at 503; *see also Playboy Enters. v. Frena*, 839 F. Supp. 1552, 1562 (M.D Fla. 1993) ("defendant[s'] actions of deleting plaintiff's text from the photographs, adding his own text to some of the photographs and appropriating [plaintiff's] photographs without attribution to the

copyright owner violated Section 43(a) of the Lanham Act.") (granting summary judgment on Lanham Act claims to plaintiff).

As interpreted by Defendants, Florida Administrative Code § 61G1-18.002(2) thus falls into the third category of preempted state regulations, because compliance with both the Code and the Lanham Act is impossible and because the Code stands as an obstacle to the accomplishment and execution of the purposes and objectives of the Lanham Act. The Supreme Court explained nearly a Century ago: "[I]f the purpose of the act cannot otherwise be accomplished -- if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect -- the state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones,* 225 U.S. 501, 533, 32 S.Ct. 715, 726 (1911). *See also Capital Cities*, 467 U.S. at 705, 104 S.Ct. at 2703 (holding Oklahoma statute preempted because it conflicted with federal regulation); *Sperry v. State of Florida*, 373 U.S. 379, 384, 83 S.Ct. 1322, 1326 (1963) (holding Florida law preempted because it conflicted with Federal patent laws).

**III. Conclusion**

The Complaint, without question, properly alleges the elements of every claim asserted. Defendants' motion to dismiss, which is supported by no evidence and no relevant legal authority, fails to overcome the strong presumption afforded the Plaintiff at the motion-to-dismiss stage. *See Harris*, 73 F.3d at 324. Therefore, Defendants' motion should be denied.

Respectfully submitted,

R. Randy Edwards (Admitted *pro hac vice*)
R. Charles Henn Jr. (Admitted *pro hac vice*)
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309
(404) 815-6500 (tel)
(404) 815-6555 (fax)

John C. Carey
Florida Bar No. 78379
KILPATRICK STOCKTON LLP
First Union Financial Center
200 S. Biscayne Blvd., Suite 2000
Miami, FL 33131-2310
(786) 777-8033 (telephone)
(786) 777-8001 (facsimile)
jcarey@kilpatrickstockton.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on counsel for Defendants via first-class mail, postage prepaid, and addressed as follows:

Douglas C. Broeker, Esq.
Sweetapple, Broeker, Varkas & Feldman
601 Brickell Key Drive
Courvoisier Center II, Suite 805
Miami, FL 33131

This 24th day of January, 2003.

R. Charles Henn Jr.

# EXHIBIT A

*Investments Limited*

215 No. Federal Highway
Boca Raton, Florida 33432
(561) 392-8920
Fax (561) 392-3561

**October 18, 2001**

**Mr. David Kitchens**
**Cooper Carry**
**112 S. Alfred Street**
**Suite #100**
**Alexandria, VA 22314**

**Re: Royal Palm Plaza**

**Dear David:**

**I must say I was very disappointed to get your letter of October 15th. First of all, you've been talking with Arthur Beckerman of our office, on a regular basis, as have members of your staff, and you should have received over $100,000 in fees paid to your office alone, plus fees paid to other consultants so far on this project, and we are not behind on our payments at all. On the other hand, there have been numerous revisions on the part of your side, with changes and surprises thrown at Arthur and me almost on a daily basis on issues we can't understand why were not recognized or came up weeks, if not months ago. In any event, your company does have a fine reputation, and I'm sure we can get through this project if your firm applies itself fully to it, without further surprises at the last minute. As you know, I thought we were going to start with working drawings in October, and file with the City in December, and now it looks like things are already delayed, and I hope they won't get delayed further.**

**<u>I must remind you, David, that when you came to my office and we sat and discussed personally, we agreed that the fees to Cooper Carry would be on a time and materials basis, but in any event, would not exceed $750,000 to Cooper Carry for its services in connection with getting the keys to this building.</u> You have subsequently, according to Arthur, attempted to add all kinds of additional fees on to the $750,000, trying to bring the fees closer to the $1 million dollar mark, I understand, with pre-construction, and post-construction, and during construction, and so forth, and so on. I don't think we have any problems with the other members of the team and I understand their cap on fees with an hourly not to exceed, have been agreed upon, and deposit checks have gone out to several ones of those already, as per their requests. As to Cooper Carry, I still feel that you should honor the agreement you made with me, which was as stated above.**

**By signing this letter, I am confirming that's the agreement with you, and we will pay the bills as you render them, that are fairly offered, just as we have done in**

good faith, to date. We have been owning property and managing and developing for over 32 years, and you certainly are invited to talk with anyone in Boca Raton or Boston, Massachusetts, or check any of the plaintiff-defendant indexes, to see if we have renegged on any of our agreements, at least in the past 32 years.

We do like to make a fair agreement and not pay more than we have to for services, we did not shop around based upon cost at all, but wanted you because of your reputation, and because frankly I thought you and the people I met were very nice, kind, intelligent, and had high integrity. I still feel that and I want to feel that way, and consequently will ignore the threats in the last paragraph of your letter of October 15th, as I have stated my position and I will pay you accordingly.

Please relay this to your partners and I look forward to working with you on this project in bringing it to fruition and then going on to the other five phases of this project, with Cooper Carry as well.

With kindest regards.

Sincerely,

James H. Batmasian

JHB:lg
cc: Charles Siemon
Arthur M. Beckerman
Marta Batmasian

P. S. Charlie reiterated today that you promised us your <u>personal</u> time on this project, because you know Boca intimately.